# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

LAURA BENY

       Plaintiff,

v.                                   Case No.:
                                        Hon.
                                        Mag.

UNIVERSITY OF MICHIGAN,
UNIVERSITY OF MICHIGAN LAW SCHOOL
and DEAN MARK D. WEST
(individual and professional capacity),

       Defendants.
_____/

Alice B. Jennings
EDWARDS & JENNINGS
*Attorneys for Plaintiff*
3031 West Grand Blvd. Suite 435
Detroit, Michigan 48202
313-961-5000
ajennings@edwardsjennings.com

Carl R. Edwards
EDWARDS & JENNINGS
*Attorneys for Plaintiff*
3031 West Grand Blvd. Suite 435
Detroit, Michigan 48202
313-961-5000
cedwards@edwardsjennings.com

_____/

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

     NOW COMES Plaintiff, PROFESSOR LAURA BENY, by and through her

attorneys, Edwards & Jennings, P.C., by Alice B. Jennings and Carl R. Edwards, and

in support of her Complaint against Defendants, UNIVERSITY OF MICHIGAN, UNIVERSITY OF MICHIGAN LAW SCHOOL, AND DEAN MARK D. WEST IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, states as follows:

## I.    NATURE OF THE COMPLAINT

### A.    Federal Counts

1.    Plaintiff, Professor Beny, brings these Federal Counts under Title I of the Americans with Disabilities Act of 1990, 42 USC §12111, *et. seq.*; and the Family Medical Leave Act of 1993, as amended.

2.    This suit is brought by an African American female tenured law professor who has been subjected to race and gender discrimination and retaliation by Defendants in violation of: Title VI of the Civil Rights Act, as amended and codified at 42 U.S.C. §2000d ("Title VI"); Title VII of the Civil Rights Act of 1964, as amended and codified at 42 U.S.C. §2000e, *et. seq.* ("Title VII"); Title IX, 20 U.S.C. §1681, *et. seq.* ("Title IX"); the Civil Rights Act of 1866, as amended and codified at 42 U.S.C. §1981 ("§1981"); and under 42 U.S.C. §1983 ("§1983") for violation of her federal civil rights and constitutional rights.

3.    Plaintiff brings a count under the United States Constitution, First Amendment, for violation of her freedom of speech; Fifth Amendment, for unjust taking of her salary and other economic benefits; and for violation of Plaintiff's Fourteenth Amendment Equal Protection and Due Process rights.

**B.** **State Counts**

4.     Plaintiff Professor Beny brings counts under the Michigan Elliott-Larsen Civil Rights Act for violations based on sex and race discrimination, harassment, and retaliation; and familial status and marital status discrimination. Plaintiff brings a state count under the Persons with Disabilities Civil Rights Act, based upon violations under the Act of "perceived disability."

5.     Plaintiff seeks all available remedies, including damages, attorneys' fees, costs, interest, and compensatory damages.

## II.     PARTIES

6.     Plaintiff, Professor Laura Beny, is a resident of Bloomfield Hills Township, County of Oakland, State of Michigan.

7.     Defendant University of Michigan is a public research university in Ann Arbor, Michigan. The University was established on August 26, 1817, in Ann Arbor, Michigan. It is Michigan's oldest university; its Law School was established in 1859. At all times pertinent, Defendant University of Michigan is an employer subject to the provisions of Title VI; Title VII; Title IX; ADA; Family and Medical Leave Act; United States Constitution, First, Fifth, and Fourteenth Amendments; Michigan Elliott-Larsen Civil Rights Act; and Michigan Persons With Disabilities Civil Rights Act.

8.     Defendant Mark West served as the Associate Dean of the University of Michigan Law School from 2008 to 2013. From 2013 to the present, Defendant West has been the Dean of Defendant Law School. Defendant West is being sued in his official and individual capacity, and made employment decisions, or ratified employment decisions, that adversely impacted, and continue to adversely affect, Plaintiff Professor Beny's terms and conditions of employment.

9.     At all times relevant, the Defendants were conducting their actions under color of law.

10.    Defendants at all times received federal financial assistance.

11.    All acts and omissions by Defendants University of Michigan and University of Michigan Law School were conducted within the scope of ordinary business; and all acts and omissions by their agents and/or employees Dean Mark West, Associate Dean Kristina Daugirdas, and Law School Chief Operating Officer Michele Frasier Wing, were conducted within the scope of their employment, at all relevant time periods stated in this Complaint and continuing to present.

12.    Former Vice Provost Robert Sellers and former Provost Susan Collins were acting within the scope of their employment, at all relevant time periods stated in this Complaint until around May 2022.

## III.   COMMON STATEMENT OF FACTS

13.     Plaintiff, Professor Laura Beny, is a fifty-four (54) year old African American female. Plaintiff is a single parent of one (1) child.

14.     Plaintiff's educational attainment is outstanding:

- Stanford University, Palo Alto, CA
B.A., with distinction, in Economics 1990

- Harvard University, Cambridge, MA
M.A., Economics, June 1994

- Harvard Law School, Cambridge, MA
J.D., June 1999

- Harvard University, Cambridge, MA
Ph.D., Economics, June 2002

15.     In 2003, Plaintiff Beny was hired at Defendant University of Michigan Law School as a tenure track hire in the position of Assistant Professor of Law at Defendant's Law School. Plaintiff's cohort included John Pottow, a white male and Jill Howitz, a white female. All three (3) were hired at the same salary, with the expectation that their salaries would move in what Defendant Law School refers to as its policy of "lock-step" pay increases.

16.     Plaintiff, during and after her educational attainment, has received several awards and research grants for her outstanding scholarly achievements in law and economics.

17.     Plaintiff, a trailblazing subject matter expert in the areas of law and economics, is recognized nationally and internationally for her scholarly work. Since

joining Michigan Law in 2003, Professor Beny, the Earl Warren DeLano Professor of Law, has taught Corporate Finance, Enterprise Organization, International Finance, The Public Corporation, Law and Development, Law and Finance, and a de novo course she created, Africa in the Global Legal System.

18.    Defendant University of Michigan Law School promotes Plaintiff, on its Law School website, as a unique and cutting edge thinker and creative scholar and educator:

"In fall 2018, Beny taught a custom-developed course entitled, Africa in the Global Legal System, the first of its kind among U.S. law schools. This novel course integrated her research and teaching interests, which span Africa, law, economics, finance/capital markets, international development, and political economy. The course prepares students to embark upon legal, policy, business, and/or nonprofit careers that engage with the African continent from legal and strategic perspectives.

Beny's research has been published in the *American Economic Review, American Law and Economics Review, Journal of Corporation Law, and Harvard Business Law Review,* among others, and has been cited in numerous print and digital media, including *The Economist, The Age* (Australia), and *Global Risk Regulator*, and has been referenced in congressional testimony. She is co-editor of the book *Sudan's Killing Fields: Political Violence and Fragmentation* (Red Sea Press, 2014). Beny also has published many opinion pieces on Africa, particularly Sudan and South Sudan, in various international media, including *Newsweek International*, Africa.com and *Al Jazeera.*

In 2007-2008, she served as a legal consultant to the Government of Southern Sudan prior to its independence from Sudan in 2011. In 2015, Beny was elected and served a two-year term on the executive committee of the University of Michigan International Institute's African Studies Center. Before joining Michigan Law, she practiced at Debevoise & Plimpton, a global law firm based in New York City, where she provided legal counsel to both business and pro bono clients.

She [served from 2018 through 2021] as associate director of the U-M African Studies Center."

19.     At the time of Plaintiff's hire in 2003, she was only the second African American female tenure track professor hired at Defendant University of Michigan Law School in its then nearly one hundred and fifty (150) year history. The first tenured African American female was hired around 1976. An African American male was also a tenured professor at the Defendant Law School in 2003. Since 2003, the total number of tenured and tenure track professors at the Law School fluctuates but it nears one hundred (100).

20.     In 2004, Plaintiff was instrumental in the hiring of the third African American female on the tenure track. After that the Law School interviewed very few African American female candidates for the tenure track, in spite of the existence of highly qualified candidates, and did not hire another tenure track or tenured African American female until 2022.

21.     Plaintiff's tenure was granted in 2008 at Defendant Law School. In 2009, her African American female colleague was also granted tenure. By 2009, Defendant Law School had, for the first time, three (3) tenured African American female professors.

22.     In or around 2012-2013, the most senior tenured African American female professor retired from Defendant Law School. The third tenured African American female professor who Plaintiff assisted in recruiting has been a fulltime

employee in a corporation outside of Defendant Law School, since approximately 2018, and is no longer a fulltime professor. Yet, as of August 2022, Defendants maintain the African American female's profile on the Law School's website and represent that she is still teaching and writing as a tenured professor at the Law School.

23.    From 2018 to around July 2022, Plaintiff was the only African American female tenured professor working fulltime on Defendants' Ann Arbor campus. There was only one African American tenured male professor during this same period.

## A.    Background Facts

24.    Since she was hired in 2003, Plaintiff has demonstrated, through her official committee work and her volunteer work in the community, a deep personal commitment to diversity, equity, and inclusion among faculty, staff, and students. She has consistently advocated for the Law School to increase the number of professors of color and female professors and she has advocated for equity and inclusion among students, conduct consistent with Defendants' announced and highly touted written policy goals and objectives, specifically related to Equity, Inclusion, and Diversity.

25.    Since 2003, Plaintiff has engaged in the following equal opportunity advocacy ("protected" activities) including, but not limited to:

a.    2009, served on the Law School entry level/tenure track hiring committee.

b.    2014 to the present, member of the Lutie A. Lytle Black Women Law Faculty, from which Plaintiff attempted, for several years, to recruit other African American female professors to the Law School, including preparing a list of possible well-qualified candidates upon request of Defendant Mark West in 2018. None of these candidates was interviewed or vetted for hire;

c.    2015, filed an Office of Institutional Equity race and sex/gender complaint on behalf of herself and other women professors at the Law School, after she discovered her pay had fallen "out of step" with her white male cohort and she had been paid less than the white male for several years;

d.    2016, signed the University of Michigan Law School's Black Law Students Association's (BLSA) petition for Black Lives Matter and institutional reforms at the Law School;

e.    2017, organized and hosted the 11th Annual Lutie A. Lytle Black Women Law Faculty Workshop and Writing Retreat at University of Michigan Law School (July 6-12, 2017). There were over 100 participants.

f.    2018, spoke on April 13, 2018 at the Junior Scholars Conference where she informed the organizers and attendees that the international gathering of students, which were most if not all non-African Americans, had not been organized according to the diversity, equity, and inclusion principles that Defendant Law School allegedly espouses in its policies;

g.    2021 to present, faculty advisor to the University of Michigan's LSA Student Government Sexual Misconduct Response and Prevention Task Force; and

    h.    April 2022, participated in *Anti-Racism and Faculty Success: A Virtual Conversation*, University of Michigan Faculty Senate Assembly Committee on Anti-Racism

## B.    Background Facts Showing Discrimination and Retaliation

26.    From the very beginning of her hire, Plaintiff has not been treated the same as non-African American and male professors. One senior white male professor, upon meeting her for the first time in 2003, stated "Hi, young gal" instead of greeting her by her name. Later, the same professor bragged to her about bringing a silencer rifle into his Law School office and illegally killing pigeons. Another senior white male professor asked her if she wanted to commit suicide. Both of these experiences were distressing for Plaintiff and created a hostile environment.

27.    Even as a first year assistant professor, Plaintiff began to advocate for greater diversity as she opined that the predominantly white male faculty members spoke in racialized and gender biased tones when discussing minority and female candidates for assistant professor positions.

28.    In or around the 2004-2005 academic year, a white male professor known for being vehemently opposed to Affirmative Action made a public statement that her white male cohort, John Pottow, was the only "qualified" assistant professor hired in the last several years. Plaintiff felt humiliated as everyone knew she and Pottow were hired at the same time. The Defendant Law School leadership did not reassure Plaintiff or issue any rebuttal.

29.     In 2004-2005, Plaintiff was disrupted by a white male student in her Enterprise Organization class while lecturing. Plaintiff received no support or follow up from the Law School leadership after she informed them of the incident. This was the first of a series of gender and race based hostile incidents that Plaintiff has experienced in the classroom that were not remediated by Defendants.

30.     Plaintiff noted early in her time at the Law School that her white cohorts Pottow and Horwitz both received greater funding for their research projects from Professor Omri Ben-Shahar; and Plaintiff was excluded from opportunities to participate in various Defendant Law School activities by Omri Ben-Shahar for pretextual reasons. When she complained to leadership, nothing was done.

31.     In 2005-2006, Plaintiff was initially discouraged from taking a fellowship leave at Stanford, in California. Only after Plaintiff responded that a white female assistant professor had just been allowed a leave to travel with her husband on fellowship, and that to deny her the same opportunity would be marital discrimination, as Plaintiff was single, did then Dean Evan Caminker allow Plaintiff the fellowship leave.

32.     In 2006-2007, Plaintiff, still pre-tenure, was subjected to and forced to fight back bogus and untrue claims about her scholarship, which were not mentioned in her mid-tenure review the year before, after another university expressed interest in hiring her with tenure.

33.     In 2007, Plaintiff's cohort Pottow, made an inappropriate gender/sex and sexual orientation based comment to Plaintiff, but he received no discipline after Plaintiff reported the comment to colleagues and the administration.

34.     In 2008, Defendant Mark West became the Associate Dean of Defendant Law School.

35.     In 2007-2008, Plaintiff's tenure committee of five (5) faculty had two (2) white male dissenters, despite strong positive reviews of her scholarship from scholars in her field outside of the Defendant Law School.

36.     In 2008, Plaintiff received at least two-thirds vote for tenure among the tenured voting faculty and was granted tenure.

37.     After Plaintiff's tenure party, which then Associate Dean Defendant Mark West, a white male attended, emailed Plaintiff that he almost broke her brother's neck at the party, just to see if he could do it. "I almost broke his neck just to prove that I could do it, but I held back." Plaintiff saw this statement to be an act of racial harassment, hostility, and retaliation against her. She and her brother were deeply disturbed by this statement because of its violent racial connotations.

38.     In 2009, the African American female professor, who Plaintiff Beny was instrumental in recruiting, received tenure.

39.     In 2009, Plaintiff was on the personnel committee, the only female out of four (4) committee members. A female candidate with a JD and Ph.D. was one of

the highest rated candidates by the faculty. Plaintiff advocated for her to be hired as did faculty experts (all females) in her field. The committee told Plaintiff to write the memo recommending her to be hired. After Plaintiff spent days carefully writing the memo, the committee backed out of supporting the female candidate getting hired in the faculty meeting and left Plaintiff standing alone. Without the committee support, the faculty did not vote for the candidate to get hired. Instead, the faculty voted to hire a weaker female candidate whose husband (white male) the committee wanted to hire. Both the hired candidate and her husband were not on the formal job market and did not interview formally, like all other candidates, but were recruited through informal networks. A casual "interview" over dinner with the personnel committee was the method used to recruit the couple. Plaintiff states that some faculty members took note of Plaintiff's position in favor of the other female, which went against the general grain to support white male hires but was based firmly on principle and merit.

40.     In 2009, Defendant West saw Plaintiff walking in downtown Ann Arbor with a male companion. He emailed Plaintiff shortly thereafter and wrote Plaintiff a sexually harassing and humiliating email, stating "That was August 2 feet behind you, right? Why do you make him walk back there?" This theme of Plaintiff being a dominatrix has been constant in Dean West's inappropriate sexist and racist

comments toward Plaintiff and it has influenced his discrimination and retaliation against her to the present.

41.     In 2009, Plaintiff saw Defendant West off campus on another occasion and he emailed Plaintiff later, noting that Plaintiff looked startled to see him off campus. Plaintiff told him that she didn't recognize him because he was in "street clothes." He responded, "Some people can't get used to how awesome I look in different settings." This was sexually harassing to Plaintiff as she had not mentioned anything that would allow Defendant West to respond in that manner.

42.     In January 2010, Defendant West stated in an email to Plaintiff that he would put the picture of her infant daughter on his desk and tell everyone it was his child. "I'm going to put the picture on my desk and tell everyone it's mine." Plaintiff found this statement to be sexual harassment and she felt humiliated by the sexual and racial undertones. Associate Dean West also gave Plaintiff the following unsolicited advice about taking care of a female infant: "For a girl; front to back. Boys are easier." Plaintiff was humiliated and horrified by this inappropriate and uncalled for reference to her female child's private parts as she had not solicited it, nor was it a topic of discussion.

43.     Dean West, the Associate Dean, wrote an email to Plaintiff, dated December 16, 2010, that stated:

> "People are persecuting me because of your beauty. Make them STOP!! The people down in communications are all over my ass trying

to get me to cajole you into finding time for a photoshoot. I said hay lay off of Laura she is fucking awesome, they said they still need your picture even if you are fucking awesome. I thought maybe they could use another picture, but man other pictures do not do you justice. I am considering substituting a picture of Andrei Shleifer [Plaintiff's Ph.D. advisor at Harvard]. I will not grovel to you again. Your humble minion, Mark XOXOXO."

Plaintiff found these statements, continuing the dominatrix trope, to be offensive and an act of sexual harassment and retaliation against her. Plaintiff felt demeaned and horrified. Plaintiff was a new single mother, her daughter being exactly one year old. No other single parents were on the faculty at Defendant Law School, to Plaintiff's knowledge and belief; and Defendant West never spoke to other new mothers, white women, on the faculty in the same offensive manner.

44.     Defendant Dean West, as the Associate Dean of the Defendant Law School, on more than one occasion spoke to Plaintiff about how attractive, or beautiful, a particular female professor was; and conveyed his personal interest in this woman and another woman. Plaintiff never discussed her private life with Defendant West and she was not interested in his. Plaintiff knew this was inappropriate as it created a sexually hostile work environment for her.

45.     In 2013, Defendant Dean West became the Dean of the Defendant Law School.

46.     In 2013, Professor John Pottow, Plaintiff's cohort, asked Plaintiff to review the academic writings of several potential candidates for hire at the Law

School. Plaintiff carefully read several papers and wrote a memo evaluating the work. Plaintiff was shocked and horrified by Professor Pottow's sarcastic, abusive response implicating her race and sex, "Way to go, hegemonist. You are The Man!!" Plaintiff complained to Defendant West about this racist and sexist, abusive comment. Instead of supporting Plaintiff and assuring her that this type of conduct was unacceptable, Defendant West told Plaintiff to see the humor in it. Defendant West later turned the situation around and construed Plaintiff as the abuser, while disregarding the sexism and racism directed at Plaintiff by white male Pottow.

47. In late 2013 or early 2014, Plaintiff spoke at a Law School faculty meeting about the difficulty she faced as an African American faculty member. Several faculty members later told Plaintiff privately that they believed her. One white male professor even told Plaintiff at her office that he is aware that many, if not most, of his colleagues are "racist" and he apologized to Plaintiff on their behalf. The administration offered Plaintiff no follow-up support after Plaintiff's heartfelt statement to her colleagues.

48. In 2014, at an alumnus meeting, Plaintiff, the only African American and female in the meeting, was treated dismissively and cut short by the male professors in the meeting. Though Plaintiff reported the humiliating incident to Defendant Dean West, she received no support or assurance of equity and inclusion from him.

49.     In 2014, Plaintiff's white male cohort, John Pottow, received a chaired professorship. Plaintiff did not receive a chaired professorship until 2019, five (5) years later.

50.     In a meeting in or around 2014 with Dean West and Associate Dean Monica Hakimi about institutional inequities, Plaintiff provided many suggestions about how the institution could restructure itself to be more equitable and less hostile; including but not limited to, rotating leadership opportunities, adopting a more inclusive approach to faculty recruitment, including discarding recruitment methods that are known to perpetuate gender and racial biases in faculty hiring, such as informal networks and word of mouth recruiting. Both West and Hakimi were dismissive, condescending and mocking in tone toward Plaintiff, asking her when she was going to "let it go." Plaintiff was shocked and humiliated by the leadership response.

51.     Just a short time after her meeting with Defendant West and Associate Dean Monica Hakimi about equal opportunity at the Law School, Plaintiff learned that her salary was less than that of the white male, John Pottow, in Plaintiff's cohort. Plaintiff had shared her disappointment about the fact that Pottow had received a chaired professorship, while she did not, over dinner with a colleague. The next morning, Plaintiff received an email from the colleague informing her that Pottow's salary had been higher than hers for years when they were supposed to be paid the

same salary based on Defendant's "lock step" policy. By the end of 2012, Professor Horwitz, a white female in Plaintiff's cohort, had left Defendant Law School, but her salary was also higher than Plaintiff's before she left. Plaintiff's salary rank had been moved to that of the cohort behind her, which included only the African American female tenured professor who was junior to Plaintiff. Plaintiff felt that the administration had penalized her for having championed equality and making complaints about inequities at the Law School. Plaintiff immediately asked for a meeting with Dean West, who claimed that the salary discrepancy was a clerical error and that he would correct it immediately. Plaintiff also went to meet with Evan Caminker, who was Dean at the time the decision was made around 2011-2012, since Dean West said he had nothing to do with salary decisions before he became Dean in 2013. The former dean made clear that he never made salary decisions without then Associate Dean West's participation. The former Dean's rationale was pretext; he had no reasonable justification for the disparate treatment in pay but he did not support West's untruth that the disparity was a clerical error.

52.     In late 2014, Defendant Dean West, claiming the pay differential was a "clerical error", put in for a retroactive pay increase to bring Plaintiff back into the "lock step" pay policy Defendant Law School has for cohorts hired at the same time.

53.     Around 2015, Plaintiff expressed her keen interest in being appointed to the personnel committee or the educational environment committee.

54.    To date, Plaintiff has not been placed by Defendant Dean West on the personnel committee, despite her expressed interest. The personnel committee is instrumental in hiring new faculty. However, its membership rotates among a small handful of faculty, mostly white, who rely heavily on personal and informal networks of recruitment. Special programs (such as Law and Economics, Empirical Legal Studies, etc.) are perpetually directed by the same people, giving them control over important resources and opportunities in and outside of the Law School. Defendant Dean West provides no express criteria for leadership of programs or participation in important committees, even when asked by Plaintiff Beny.

55.    In 2015-2016, Plaintiff filed a formal complaint with Defendant University of Michigan's Office of Institutional Equity (OIE) requesting an investigation of salary inequities among the Law School faculty after she learned from a female colleague that there had been several salary inequities negatively affecting mostly women. At that time there were only two (2) African American female tenured professors and one (1) African American male tenured professor. There were no African American assistant professors on the tenure track.

56.    The OIE concluded there was no discrimination or retaliation against Plaintiff, but failed to present Plaintiff with any evidence of the investigation, such as written justification for her lowered salary rank.

57.     In November 2016, Plaintiff was recognized by Harvard Law School students for her significant contributions to legal academia.

58.     In 2017, Plaintiff continued to work on issues of equal opportunity at Defendant Law School though she saw her efforts being ignored or treated in a dismissive manner by the Defendant administration, most particularly Defendant West. She hosted an event named after one of the first female law professors in the United States, the Lutie Lytle Black Women Law Professors Conference and Writing Retreat. Over 100 people attended the event at Defendant Michigan Law School. Dean West initially said he would open the conference but then pulled out days before. Later, while several of the professors sought to be considered for a professorship at University Michigan, not one (1) was even interviewed though several were hired at top law schools.

59.     In fall of 2017, Plaintiff took a medical leave of absence due to the cumulative toll of the discriminatory, hostile, and retaliatory work environment on her health based on the work related trauma.

60.     Though Plaintiff experienced discrimination and retaliation since her early years, after Plaintiff's OIE complaint in 2015 to the present, Plaintiff has experienced an escalation of the disparate treatment and an intensifying discriminatory and retaliatory work environment, while continuing to advocate for equity and fairness at the Law School.

61.    In 2016, Plaintiff began to reach out to high level University leadership about the Law School climate. Plaintiff informed the Vice Provost of Diversity Equity, and Inclusion, Robert Sellers, in 2016 in person about the race and gender based disparate treatment she and others had been experiencing at Defendant Law School. From 2016 to 2022, Plaintiff on multiple occasions has informed former Vice Provost Sellers, verbally and in writing, about the discrimination, disparate treatment, hostile work environment and retaliatory treatment she has experienced since her hire compared to white male professors.

62.    From 2013 to the present, Plaintiff has spoken to Defendant Dean West and documented in writing the discrimination, disparate treatment and/or retaliation she has experienced at Defendant Law School, compared to white male professors.

63.    In 2019, Plaintiff informed Provost Martin Philbert via email of the discrimination, disparate treatment, hostile work environment and retaliation she was experiencing compared to white male professors.

64.    In 2022, Plaintiff Beny wrote to interim Provost Susan Collins regarding the discrimination, disparate treatment, hostile work environment and retaliation she was experiencing and requested a meeting with her. She was not afforded a meeting.

65.    On April 13, 2018, Plaintiff challenged the students who had organized a conference of international students for their bias in primarily inviting only their

friends and countrymen, mostly white males, to the conference which was visioned to be open and competitive for anyone in the world to attend. Plaintiff's mentee, a student from South Africa, complained to her about the bias she witnessed in the selection process. Plaintiff tried to speak with the student organizers privately before the conference, but they did not respond to Plaintiff's email concerns. Because she believed that the organizers were in violation of Title VI and/or Title IX, Plaintiff decided to speak out at the conference about the racial and gender institutional inequities that the students were perpetuating. Plaintiff was within her speech rights, pursuant to UM policy/Standard Practice Guide 601.01, as she did not prevent the conference from proceeding. Plaintiff addressed the conference for only a few minutes in its opening ceremony.

66.    On April 19, 2018, Plaintiff was called into a meeting with Defendant Dean West, along with the Law School's Chief Operating Officer, Michele Fraser Wing. Plaintiff was asked what had occurred on April 13, 2018. Plaintiff provided her account of what had taken place. Plaintiff was not advised by either West or Frasier Wing that the meeting was disciplinary in nature or that it would be the first of two meetings.

67.    In May 2018, Plaintiff was called to an unexpected second meeting with Defendant West and Frasier Wing regarding the April conference. In this meeting, Defendant West handed Plaintiff a disciplinary letter, dated May 15, 2018, in which,

although he acknowledged the non-diversity of the event, he threatened Plaintiff with future discipline, including termination. Defendant West's letter falsely characterized Plaintiff using ages-old racial stereotypes (e.g., "intimidating," potentially violent, etc.) and the racist/sexist trope of the "angry Black woman." The letter did not contain the accounts of students who did not find Plaintiff threatening and who supported her statements, because Plaintiff was not provided an opportunity to bring witnesses. She was not afforded due process. The result was a written warning placed in Plaintiff's personnel file threatening severe sanctions and possible termination in the future for similar conduct. White male colleagues are not disciplined as severely for similar or worse conduct, even when they are sexually or racially inappropriate toward students, staff and/or faculty colleagues.

68.     By fall of 2018, Plaintiff knew that she was being singled out as the only remaining full time African American female tenured professor at the Law School and one who has consistently advocated for greater equity. Plaintiff's anxiety at the Law School, which was already high, spiked. She was fearful of further retaliation and disparate discipline by Defendant Dean West.

69.     Later in the fall of 2018, Defendant Dean West called Plaintiff to a meeting with him and the chair of the personnel/hiring committee in the Dean's office and they asked Plaintiff to recommend Black women whom they should consider recruiting. Though Plaintiff, based on prior behaviors, knew this was not a

serious endeavor, she provided them with a list of about ten (10) to fifteen (15) well-qualified Black women scholars. Plaintiff told Defendant Dean West and the committee chair what field each potential candidate writes in, and in some cases, Plaintiff added a few extra words about what the particular scholar might bring to the Law School.

70.    Shortly thereafter, Plaintiff was demoralized and humiliated when Defendant Dean West and the personnel committee chair rolled out the list of scholars whom they were inviting to the Law School for interviews. There was no African American female, Plaintiff recalls. Plaintiff knew the entire request for a list of qualified candidates was a disingenuous ruse. Not one of the women on the list Plaintiff provided was invited. When Plaintiff asked why, the chair of the personnel committee told her it could take over a year to review the women's academic work. Yet, within a few weeks, on the recommendation of a white male junior colleague of Plaintiff's, Defendants quickly reviewed the work of a male candidate and gave him an offer shortly after that. To date, none of the women whose names Plaintiff provided to Defendant West has been invited to interview at the law school, although several of them have been interviewed and/or hired by other prestigious law schools.

71.    On October 10, 2018, Plaintiff had a disagreement with Dean West's administrative assistant outside the Dean's office. The next morning Plaintiff emailed her to apologize for Plaintiff's role in any misunderstanding between them

and offered to tell her in person. Instead of responding to Plaintiff, the administrative assistant forwarded Plaintiff's email to Dean West, who emailed Plaintiff and told her not to go to the dean's suite to speak to his assistant. Defendant West called Plaintiff into a meeting with him and the Chief Operating Officer Frasier Wing on November 6, 2018. Once again, they did not inform Plaintiff that the meeting was a disciplinary proceeding; or the first of two meetings in the process. In the meeting they asked what happened during Plaintiff's interactions with Dean West's assistant. Because Plaintiff did not know this was a disciplinary proceeding and what the process would be, she did not present her perspective on what happened because Plaintiff did not want to reopen the episode. Nor did Plaintiff want to speak negatively about the dean's assistant, whom she had been on friendly terms with for years. Neither Defendant West nor Chief Operating Officer Wing informed the Plaintiff before, during, or after the meeting that they would decide the "truth" of what happened if she didn't give her view. Neither Defendant West nor Chief Operating Officer Frasier Wing told Plaintiff there would be a follow up meeting with discipline. Again, Plaintiff was denied due process.

72.    In December 2018, students informed Plaintiff that Dean West had told students who complained about a white male professor's classroom racism that the most he could do is "ask that professor to apologize to students". The professor's tenure, he told the students, protected that white male professor from any further

consequences. Defendant Dean West went further and told the students that the professor could probably even pay students for sex and still keep his job. Plaintiff was shocked to learn this from her students. First, it was completely inappropriate and out of context for Dean West to use such a sexually charged and degrading example, prostitution, as an illustration of the protections afforded by tenure to a white male professor whom students had perceived as racially abusive in the classroom. Second, the dean's remarks to the students confirmed to Plaintiff that she is disciplined disparately from white male professors who behave inappropriately at the Defendant Law School; her tenure status has never protected her from harsh discipline including threats of termination. White male colleagues are not penalized as severely as Plaintiff for similar or worse conduct, even when they are sexually or racially inappropriate toward students, staff and/or faculty colleagues.

73.     In or around December 18, 2018, Plaintiff Beny confidentially shared with a female colleague/tenured professor what the students had told her about Defendant West's comment to the students regarding the strong protection of tenure, even if a professor offered to buy sex from a student or had been racist in the classroom. Plaintiff asked her colleague for confidentiality because she was concerned about retaliation.

74.     Shortly after Plaintiff's female colleague spoke with Dean West about his inappropriate sexual comments to the students, Plaintiff was called via email into

a meeting with Defendant West and the Chief Operating Officer Michele Frasier Wing on February 7, 2019. Plaintiff had no idea what this meeting was about so she asked Dean West via email. Plaintiff told him that she would be willing to meet about constructive ways forward with the institution. In response, Dean West said that it was a follow up to the meeting of November 6, 2018. Plaintiff was surprised because three (3) months had passed since the first meeting in November 2018 and she was not advised then that the November 2018 meeting was just the first of two (2) meetings in a disciplinary proceeding. This meeting and the earlier meeting constituted a violation of Plaintiff's due process rights because she was not notified in advance of their disciplinary nature as required by SPG 201.96. At the second meeting in February 2019, Dean West violated university policy by forbidding Plaintiff from having a support person present; which the Vice Provost, Robert Sellers, had advised Plaintiff she could do. Plaintiff had an attorney/professor friend travel from Chicago to support her. Upon her support's arrival, Defendant West prohibited him from entering the conference room. In the meeting, Dean West handed Plaintiff a memo which spelled out his version of events that took place between Plaintiff and his administrative assistant in October 2018, and sanctioned the Plaintiff as follows:

> "I have determined that sanctions are now appropriate. You currently are eligible for a mid-sabbatical in winter 2020 and a university sabbatical in winter 2023. As a result of your actions, your leave schedule will be pushed back by one year. Your mid-sabbatical

eligibility will be pushed to winter 2021. Your university sabbatical clock will be pushed back by one year, so that the first date of eligibility for your next sabbatical will be winter 2024, and subsequent sabbaticals will be delayed accordingly.

If your conduct is inappropriate in the future, both the April 13, 2018 incident (that led to the May 15, 2018 letter) and the October 10, 2018 incident may also be taken into account when determining appropriate sanctions. Those sanctions may include, but are not limited to, impact on your compensation (salary or otherwise), further changes to the schedule under which you are eligible for leaves (including university sabbaticals), and recommendation of dismissal in accordance with the appropriate procedures."

The document was one-sided, contained several false allegations, and did not include Plaintiff's account of events. Plaintiff believed that she had been retaliated against for her continued civil rights advocacy and the events leading up to the surprise discipline. As in the memo of 2018, Dean West described Plaintiff using ages-old racist and sexist stereotypes of Black Women. The memo falsely described Plaintiff's remarks to the Dean's assistant. The memo also falsely insinuated that Plaintiff had bragged about having a Ph.D. and JD in the November 2018 meeting, but what Plaintiff had said was that she had a lot to offer the Law School because of her unique and varied life experiences. The memo concluded by deferring Plaintiff's next sabbatical, which was supposed to be in 2020, by one year. Plaintiff read the memo but did not sign it because of the falsities that it contained and the serial violations of her due process. She again wrote a rebuttal and requested that it be included in her personnel file. Plaintiff lost her next earned sabbatical at great

expense to her academic productivity. Now, as of 2022, Defendant West has eliminated all her sabbaticals and research leaves until mid-2027. Plaintiff was psychologically traumatized by Defendant West's continued disparate and retaliatory treatment of her. White male professors are not so severely sanctioned for disagreements with, and even prolonged abuse of, Law School administrative assistants.

75.     In fall 2019, due to cumulative distress from years of discrimination and retaliation, Plaintiff took a medical leave for work related psychological trauma. Plaintiff was on leave from September 2019 to December 2019.

76.     Since 2018, Plaintiff has been repeatedly denied the opportunity to teach in the "new summer program", Masters of Corporate Law (MACL). MACL is a service and career growth opportunity, considered executive education. It is also a supplemental income opportunity for those professors who teach the course, offering approximately Twenty Thousand Dollars ($20,000.00) in income for the summer. Plaintiff is the only faculty member in the Corporate Law group who has not been invited to participate as a professor in this program since its inception. Plaintiff is also the only African American female fulltime professor in the Corporate Law Group and was the only African American female fulltime tenured professor in the entire Defendant Law School between 2018 and 2022. White males who are junior to Plaintiff have been invited to teach in the program. Plaintiff believes there is a

"pact of silence" among the male professors in the Corporate Law Group, most of whom were involved in planning the program, about her repeated exclusion from the MACL program. When Plaintiff has asked what the criteria are for participating in this program, she has not received a satisfactory answer. Plaintiff believes her repeated exclusion from the MACL opportunity is part of a pattern of discrimination and retaliation against her by the director of the MACL program, Professor Adam Pritchard, who also teaches in the program. Plaintiff has complained to Defendant Dean West about her exclusion from the MACL program; she has requested a review from the Office of Equity Civil Rights and Title IX ERCT, formerly Office of Inclusion and Equity (OIE) and attempted to raise her concerns with former Provost Collins. None of the help she sought has been forthcoming and the selections for the summer position remain predominantly male and white; all rubberstamped by Defendant Dean West.

77.     In March 2021, after student demands, Dean West made a public apology for his racism and sexism against Asian women expressed on his book covers after denying the change for many years. In his apology, which was forced out of him by public pressure and press, he finally admitted:

> "One thing that I got unequivocally wrong; some of my book covers. I understand the pain I have caused by giving tangible form through those covers to the often invisible experiences of racism and sexism some of you have experienced in your own lives. I didn't actively interrogate historical ***racism*** and ***hurtful stereotypes*** or damaging depictions of ***gender roles*** – instead, ***I sometimes traded in those stereotypes*** and

reproduced those depictions. My doing so contributed to a narrative that promotes a two-dimensional and ***offensive characterization of people, and especially women***; it suggests that women should think of themselves in ways that are ***lesser***. Further, it reinforces a view of women founded on damaging stereotypes. And while contributing to a ***harmful narrative*** was not my intent or understanding at the time, I understand it now, and I understand that my intent does not excuse or lessen the ***harm***."

Letter dated March 24, 2021, to "Members of the Michigan Law Community", Dean at Elite Law School Apologizes For Offensive Characterizations" His Books Perpetuated A Culture Of Racism and Misogyny by Kathryn Rubino.

Defendant West was untruthful in his apology. He has not apologized to Plaintiff for his continuing racist and sexist discrimination, harassment and retaliation against Plaintiff, which has and continues to have harmful impacts on her psychological condition and her professional standing in the Defendant Law School. Plaintiff knew that, even as he gave lip service to finally "understanding" the pain he had inflicted, he was continuing to inflict the traumatic sex/race discrimination and retaliation upon Plaintiff.

78.    In late December 2021, Plaintiff shared with her faculty colleagues several of Defendant West's inappropriate racialized and sexualized comments to her that reveal his longstanding attitude toward her, a female and African American, as "lesser". Plaintiff wanted her colleagues to know the extent of hostility and inequities at the Law School as a matter of general concern. Plaintiff knew she was being setup for termination since at least 2018 and wanted her colleagues to give her

support and assist her from being railroaded out of the Law School. Only four (4) of over one hundred professors responded to Plaintiff's emails asking for help though many of her colleagues write in the fields of civil rights, equal opportunity justice, and women's rights; few of those professors reached out to her. By January of 2022, Plaintiff was experiencing extreme trauma and anxiety when she came onto campus.

79.    In fall of 2021, Associate Dean Kristina Daugirdas began to increasingly monitor and harass Plaintiff in the classroom. She accused Plaintiff of taking off her mask in class in violation of the Law School's COVID-19 policies, a false charge; marking her students too high on the grade curve which forced Plaintiff to lower her grades even though she was only slightly off the recommended curve (less than .1 points); and teaching on Zoom when her daughter, a minor, was in COVID-19 isolation. Daugirdas insisted she bring her daughter to campus to sit in Plaintiff's office while she taught for hours in another area of the building. Plaintiff learned from students that white and male professors taught on Zoom when they had concerns about their minor children's exposure to the virus. Only Plaintiff, the unmarried single parent, was told she could not and chastised for doing so.

80.    Between late November 2021 to February 2022, Plaintiff submitted several complaints to the UM Equity Civil Rights and Title IX office (ECRT) regarding disparate treatment and retaliation by the Defendant Law School and its agents.

81.     In early February 2022, Plaintiff expressed concern that Associate Dean Kristina Daugirdas had refused to listen to a student for raising the possibility of racial/gender bias in their final grade from the prior term; a possible civil rights violation. Plaintiff advocated a different course of action after the student advised the committee they were the only brown person/person of color in the classroom. On February 8, Plaintiff informed the Law School Administration, specifically Chief Operating Officer Frasier Wing, that she had filed complaints with UM ECRT and the EEOC regarding ongoing discrimination and retaliation and failure to address her Title IX concerns.

82.     Exactly one day later, on February 9, 2022, Plaintiff received an email from Associate Dean Daugirdas calling Plaintiff into a meeting scheduled for February 14, 2022 with Daugirdas and Chief Operating Officer Frasier Wing. The meeting was allegedly about a complaint regarding Plaintiff's Enterprise Organization course that was submitted by an anonymous student to the University of Michigan Literature Science and Arts Dean of Students, which is not the Law School but the central university, a separate governing entity. Associate Dean Daugirdas gave Plaintiff very little advance notice for the meeting and no option for an alternative time to allow Plaintiff to obtain a support person to attend the meeting with her. Plaintiff suspected she was to be further disciplined by the Law School, because of the mandatory time; the presence of the Chief Operating Officer; prior

violations of due process; and because the previous Associate Dean told Plaintiff that he never called professors to speak with him and the Chief Operating Officer under similar circumstances. Associate Dean Daugirdas called the meeting for 9:30 a.m. on Monday morning, February 14, 2022, without concern about the fact that Plaintiff lives an hour away from the Law School and has childcare obligations, including the duty to take her daughter to school, which Daugirdas had knowledge of.

83.     Plaintiff made it clear to Associate Dean Daugirdas and Chief Operating Officer Frasier Wing that she could not attend the meeting at the scheduled time because she needed time to find an attorney/support person to attend the meeting with her and because of her family obligations. Plaintiff asked them to send her an email with the student complaint so she could respond in writing while looking for a support person.

84.     Associate Dean Daugirdas emailed Plaintiff a copy of the anonymous student's complaint. Plaintiff became deeply distressed upon reading the student's allegations. Many of the allegations were flatly false. While the entire incident was traumatizing for Plaintiff because of her belief that it was pretext for retaliation, the most troubling allegation allegedly made by the student was that Plaintiff assigned problems on January 16, 2022 and made them due on January 17, 2022; and plaintiff performed poorly in class on January 17, 2022. Neither of these allegations was true,

as January 17, 2022 was Martin Luther King Day, a federal and Law School holiday, the class did not meet on January 17, and Plaintiff had not assigned any problems for that Day. Plaintiff experienced these particular claims as intentionally and racially malicious and emotionally violent, which traumatized her. Other students enrolled in the class refuted the false claims and noted the Law School's disparate treatment of Plaintiff compared to white male professors whom students have complained about. Several students cited their frustration about the administration's inaction on their complaints about other faculty members, in particular white male professors.

85.    On February 12, and 13, 2022, Plaintiff emailed Daugirdas and Frasier Wing written responses via email to the student's complaint and, where appropriate, a rebuttal to each of the student's charges. She informed them that there were several lies about her conduct in the classroom (including the claims about MLK Day) and that many of the student's allegations concerned conduct that all faculty engage in but are not called to a meeting for engaging in such conduct like Plaintiff. Associate Dean Daugirdas and Chief Operating Officer Frasier Wing ignored her point by point rebuttals and accused Plaintiff of categorically refusing to meet. Plaintiff also emailed them the written praise she received by several students in the class at issue before she was notified of the anonymous student complaint. The Law School administration disregarded these positive comments as well, confirming Plaintiff's

belief that the meeting was pretext for further retaliation by the Law School, in particular Defendant Dean West.

86.     On February 14, 2022, Plaintiff addressed the student complaint with the class; the class was being recorded by Zoom video. She did not and still does not know who submitted the complaint. Plaintiff told the students at the outset that she welcomed constructive criticism, but pleaded with them not to spread malicious lies that can have a severe negative impact on her well-being and livelihood, such as the false allegations about Martin Luther King Day. She also discussed with the students elements of the complaint that faulted Plaintiff for doing what all faculty do, including mentioning cases outside of the assigned casebook and not discussing every last page assigned. After approximately ten minutes of discussing the alleged anonymous complaint, Plaintiff delivered the day's lecture. Students were more engaged than usual. Plaintiff felt that the class ended well.

87.     Shortly after class on February 14, 2022, Plaintiff received an email from Associate Dean Daugirdas falsely accusing her of having retaliated against students. Plaintiff had merely asked the students for civility and respect, class norms that were listed on the syllabus. Professors are permitted to request civility and respect. That is not normally regarded as retaliation against students by the Law School administration, and certainly not when it is done by white male professors. Furthermore, she could not have retaliated when she did not know who submitted

the complaint. Plaintiff was overwhelmed with Defendant's untrue charges against her; she felt that at this point the classroom integrity had been violated; and that she was at risk of further false accusations and claims of retaliation if she continued to teach. Plaintiff felt that her academic freedom and speech rights had been violated as pretext for further retaliation against her. Plaintiff, embarrassed and humiliated, informed the students by email that she could no longer teach the class under severe monitoring, harassment, and retaliation by the Law School administration. Plaintiff was forcefully and emotionally harassed out of the classroom; she was incapacitated by the Defendant Law School's actions and in fear of severe punishment; she was constructively removed from the classroom and in extreme distress. On or about February 18, 2022, Plaintiff was blocked from accessing the UM "Canvas" site for her Enterprise Organization class, which holds all of her class material, including class material she created and lecture videos. The Law School's blocking Plaintiff from the class material she created violates university policy, SPG 601.28: "The University, hereby, transfers any copyright it holds in SCHOLARLY WORKS to the FACULTY who authored those works." The Law School instructed staff, including Plaintiff's administrative assistant, not to speak with Plaintiff or restore her access to the course Canvas site.

88.      Between February 9, 2022 and February 16, 2022, Plaintiff was under extreme psychological distress due to the student complaint and the Law School's

response. Her extreme distress was compounded by the urgency to attend the meeting with the administration because she knew she would be further punished if the meeting with Associate Dean Daugirdas and Chief Operating Officer Frasier Wing was further delayed. Plaintiff secured a lawyer on February 16, 2022 and immediately informed the Law School. Nevertheless, despite the alleged urgency reported to her earlier regarding the student complaint, the administration did not schedule a meeting with Plaintiff and her attorney until February 25, 2022— approximately a week and a half after the initially scheduled February 14 , 2022 "urgent" meeting.

89. On February 25, 2022, Plaintiff, and her attorney, met with Defendant Dean West, Associate Dean Daugirdas, and a representative from UM Academic Human Resources or the UM Office of General Counsel. By this date, Defendant West had instructed Law School staff not to speak with Plaintiff Beny about her pending civil rights case.

90. During the February 25, 2022 meeting, Dean West admitted that he had not read the alleged "anonymous student complaint" despite beginning the meeting with the claim that the complaint contained "very serious allegations". This was shocking to Plaintiff and reinforced her belief that the alleged student complaint was pretext for further retaliation against her.

91.     During the February 25, 2022 meeting, Plaintiff was told by Dean West that she had abandoned her duties. Plaintiff denied that she had voluntarily abandoned the classroom on February 14, 2022, but rather had been forced out by false accusations and extreme psychological distress. Plaintiff stated she had not retaliated against the students in the Enterprise Organization class, but instead told students in no more than ten (10) minutes that while she welcomes constructive student complaints, anyone making a complaint should not fabricate malicious and harmful claims/untruths about her conduct. Plaintiff also shared that she and the students went forward with a good class session, which the Zoom class recording for February 14, 2022 would show. That Zoom recording would also demonstrate that Plaintiff did not retaliate against students; several students in the class said that Plaintiff did not retaliate.

92.     On February 26 or 27, 2022, Plaintiff filed a claim online for medical leave due to psychological injury incurred on the job. She stated that the harassment and retaliation that forced her out of the classroom had caused her severe psychological distress. Later, when she realized that she might have filled out the wrong form (Worker's Compensation instead of FMLA leave), she asked the Work Connections representative, Kathleen Rychlinski, if the form she filled out was appropriate for FMLA leave as well. Ms. Rychlinski told Plaintiff Beny on the phone that they were essentially the same application.

93.     On February 27, 2022, Plaintiff received a pdf summary by email from Work Connections for her claim of a work-related injury she incurred on February 15, 2022. The same document was sent to the Law School administration at the same time according to Work Connections' email:

> "We have also included your supervisor on this e-mail as confirmation that we will be providing you with assistance."

Ms. Rychlinski confirmed this again in a written email on May 11, 2022. Therefore, by February 27, 2022, the Law School administration, including Defendant Dean West, was aware that Plaintiff was injured, that her psychological injury was caused on the job, and that she was applying for a medical leave. Plaintiff began seeing a professional service provider shortly after that two times a week, continuing to the present.

94.     On April 12, 2022, University of Michigan Payroll sent an email to Defendant Dean West stating:

> "Dear Mark West,
>
> The University Payroll Office has received notification from Work Connections that Beny, Laura will now be placed on a medical leave due to their work related injury and their time away will need to be coded accordingly. For time reporting information, please contact one of the Pay Analysts listed below based upon the first 2 digits of the employee's UMID."

Later the same day, Plaintiff received an email from Ms. Rychlinski that the above notification was sent in error and leave had not yet been approved.

95.     On April 14, 2022, Plaintiff emailed Ms. Rychlinski to clarify that she had intended to apply for FMLA, not Worker's Compensation, and submitted the proper form. By that time she had been under intense professional care for over a month.

96.     On April 15, 2022, Plaintiff and the Defendant Law School Administration received the following email notification from Ms. Rychlinski:

> "Thank you for sending me the Medical Leave Form as requested. The [healthcare provider's] information is sufficient to support disability for the period of ***2/15/2022 - 5/15/2022***.
>
> You have also met the conditions for FMLA eligibility due to your own ***serious health condition***. I have attached a copy of your FMLA approval letter that outlines your benefit dates. I am also attaching a copy of the Employee Rights and Responsibilities under the Family and Medical Leave Act for your review. All official communication regarding the details of your FMLA will be communicated to you through your University of Michigan Email account."

97.     On March 31, 2022, Plaintiff, after almost twenty (20) years of tenure at Defendant's Law School, was retaliated against and arbitrarily disciplined by Defendant West for pretextual reasons during the period of her approved Family Medical Leave under the FMLA. Dean West sent Plaintiff a disciplinary letter that essentially permanently demoted her, via severe sanctions and without the required due process under UM By-Law 5.09:

> "Accordingly, for the period beginning today and ending June 30, 2027, you are not eligible for salary increases, summer funding, Wolfson

41

> funds, Cook funds, or any type of discretionary leave, including sabbaticals, mid-sabbatical, or Elle's leaves. Your salary after that date will not return to that of your cohort."

In the communication Defendant West accused Plaintiff of "abandoning" her responsibilities, although she was on an approved medical leave between February 15, 2022 and May 16, 2022. Among other false allegations, Defendant West also falsely accused her of retaliating against her students; not contributing any scholarship for years; not doing any service work; and of being the only professor who did not attend faculty meetings in 2022-2023. All charges were untrue. However, Plaintiff was not afforded due process to rebut the claims with contradicting evidence.

98.    In the March 31, 2022 letter, additionally, Defendant Dean West accused Professor Beny of possibly carrying a gun to the Law School campus; he also stated that this was a "frequent topic of conversation among faculty members". Accusing Plaintiff of possibly bringing a gun to campus and constituting a physical threat to colleagues and others, without any supporting evidence whatsoever, is racist profiling under the color of law specifically intended to portray Plaintiff as a danger to the Law School community; to further ostracize her from any support; to build animus toward her among faculty colleagues; to intimidate Plaintiff; and to instill anxiety, fear and a sense of physical insecurity in Plaintiff Beny when she comes to campus. Plaintiff is now fearful that her physical security is at risk on the

Law School campus. Though Defendant has a "Fitness for Duty" process, Defendant Dean West advised Plaintiff she could not return back to work until she provided him a letter stating a "plan to return to work."

99. Dean West also issued the March 31, 2022 severe penalties while he had knowledge that Plaintiff Beny had initiated the administrative complaint process with the EEOC for discrimination and retaliation. His disciplinary letter evidences Defendant West's knowledge of this fact by specifically mentioning it.

100. After Plaintiff was released from her medical leave by her health care provider on May 31, 2022, Plaintiff submitted her plan for returning to her work responsibilities, as demanded by Defendant West pursuant to his disciplinary letter. In her letter, she noted that she planned to pursue all of her responsibilities as a tenured professor provided she "is not subjected to discrimination and retaliation in the workplace."

101. On June 16, 2022, Plaintiff contacted Defendant Dean West and inquired about her teaching schedule for the academic year 2022-2023.

102. On June 21, 2022, Defendant West responded by rejecting Plaintiff's plan and threatened her with termination if she did not submit a satisfactory plan immediately. He also informed her that she would not be teaching again for an indefinite period and, later, that he was not appointing her to any faculty service committee for the academic year 2022-2023.

103.   On July 28, 2022, Plaintiff resubmitted a revised plan to return to the classroom, to resume service work, and to conduct scholarship. Defendant Mark West has not responded to Plaintiff's "plan." Defendant West has prohibited Plaintiff from performing her teaching and committee service responsibilities, two (2) of the three (3) elements of her responsibilities as a tenured professor, since she returned to work at the end of her Family Medical Leave on May 16, 2022.

104.   Between February 2022 and August 2022, Plaintiff filed several additional civil rights and retaliation complaints with Defendant's Equity, Civil Rights and Title IX Department (formerly OIE), based on ongoing disparate treatment, harassment, and retaliation.

105.   Plaintiff filed a charge, dated May 13, 2022, with the EEOC related to the facts above and on May 31, 2022, she received a "right to sue letter" from the EEOC.

## COUNT I

### VIOLATION OF TITLE I
### AMERICANS WITH DISABILTIES ACT (ADA)
### OF 1990 42 USC § 12111, *et. seq.*

106.   Plaintiff repeats, realleges and incorporates paragraph 1 through 105, as set forth here and above by reference.

107.   The Defendants, specifically, Defendant Dean Mark West, has through their actions and/or omissions violated the ADA by:

a. Pretextually documenting a psychological condition, with Plaintiff potentially being violent, in Plaintiff's formal personnel records with Defendant, though no facts exist to establish such propensity;

b. Humiliating and embarrassing Plaintiff in the presence of colleagues, the administration and others, implying she is mentally unstable and incompetent to perform her duties as a tenured professor;

c. Requiring Plaintiff to miss time from work duties, with an impact on her future compensation and professional development;

d. Refusing to provide Plaintiff with performance reviews which were free from bias and perception of disability;

e. Repeatedly accusing Plaintiff Beny of abandoning her classes and students after she, in February 2022, took an approved medical leave;

f. Continuing to communicate with Plaintiff after she applied for a medical leave, in February 2022, including directing others from the Law School administration to do so;

g. Fostering the actions and omissions of other Defendant Law School agents and/or employees to refuse to communicate with Plaintiff Beny;

h. Harshly disciplining Plaintiff, on March 31, 2022, while she was on medical leave in a written communication which materially and negatively affected all terms and conditions of her employment for her remaining tenure at Defendant Law School;

i. Defendant West demanding harshly and hostilely during her approved medical that Plaintiff Beny respond to his letter of discipline with a "return to work plan" communication that outlined how she was going to resume her duties as a tenured professor at Defendant U of M Law School;

j. Denying Plaintiff her due process rights while she was on medical leave, while disciplining Plaintiff and stripping her pay, sabbaticals, research grants, scholarship awards and other terms and conditions of her employment all with knowledge Plaintiff was on a medical leave of absence; and

      k.   Upon Plaintiff's release from her medical leave by her health care provider in May 2022, Defendants refusing to allow Plaintiff to return to her full duties, though her health care provider opined that she could.

108.   On March 31, 2022, Defendant West placed an arbitrary and hostile requirement on Plaintiff that she write a "return to work plan". West rejected the first plan submitted by Plaintiff and arbitrarily requested another by a date certain. Plaintiff was threatened with termination if she did not immediately resubmit a "return to work plan." Defendant West denied Plaintiff due process and equal treatment where there is no policy requiring such a "return to work plan"; other coworkers returning from medical leave are not required to prepare a "return to work plan."

109.   Defendant West perceives Plaintiff as disabled, as he has not to this date allowed Plaintiff to return to her full classroom duties and committee work and, instead, has advised her that she will not return for the indefinite future and only when he says she can.

110.   As a direct and proximate result of said acts and omissions under the ADA, by Defendants' agents and employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation, requiring professional medical treatment; all past, present and future.

WHEREFORE, Plaintiff Beny demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, as Plaintiff is found to be entitled, plus interest, costs and reasonable attorney's fees; and all injunctive relief allowed under the ADA, as amended.

## COUNT II

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

111.    Plaintiff repeats, realleges and incorporates paragraphs 1 through 110, as set forth herein above and by reference.

112.    Defendants have violated the FMLA's provisions by interfering with Plaintiff's right to take an approved medical leave of absence from February 15, 2022 to May 15, 2022, by continuing to communicate with her, and disciplining Plaintiff on March 31, 2022 after she had asserted her request for leave under the Act.

113.    Defendant West has violated the FMLA by interfering with her right to return to her full duties as a tenured Professor and instead harassing her through the use of arbitrary requirements that Plaintiff provide him with a "return to work plan" or face termination. The Defendant's demand is not required by the certification procedure of FMLA §103, or any other federal statute, state statute, or Defendant University's or Law School's disability policies or procedures.

114.   Defendant West has violated the FMLA by disciplining Plaintiff harshly and hostilely while she was on a medically certified and approved FMLA leave and harassing Plaintiff since May 2022 in her attempt to return to work.

115.   Refusing, pursuant to FMLA §104, to allow Plaintiff Beny to return to her full tenured professor duties at Defendant UM Law School from May 16, 2022 to present.

116.   As a direct and proximate result of Defendants' wrongful acts and omissions after Plaintiff utilized, from 2017 to present, approved Disability FMLA under Defendant University of Michigan's medical leave policy, Plaintiff has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish, physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life; including the right to pursue promotional opportunities and opportunities for enhanced pay.

WHEREFORE, Plaintiff Beny respectfully requests that this court enter judgment in her favor on all her counts, and allow her all damages, plus interest, injunctive relief and attorney fees and costs allowed under the FMLA.

## COUNT III

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1886, §1981

117.   Plaintiff repeats, realleges and incorporates paragraph 1 through 116, as set forth here and above by reference.

118.   Defendants have violated §1981 by treating Plaintiff disparately and hostilely because of race in the following ways:

   a.  Allowing Plaintiff, for years at a time, to be the only African American female tenured professor at the Defendant Law School;

   b.  Treating Plaintiff Professor Beny like a stereotype of the "angry Black woman" with constant written reference by Dean West to her demeanor in stereotypical terms;

   c.  Evaluating Plaintiff's performance with a disparate standard, compared to the standard used to evaluate her white comparables;

   d.  Refusing to allow Plaintiff the opportunity to work in the Summer Master of Corporate Law Program, instead favoring non-African American colleagues;

   e.  Refusing to provide Plaintiff with the same, or similar, opportunities that are given to non-African American comparables;

   f.  Requiring Plaintiff, the only African American female, to write up a "return to work plan," while not requiring non-African Americans to do so;

   g.  Embarrassing and humiliating Plaintiff, in the presence of other colleagues, administrators, students and others, to diminish her reputation at the Defendant UM Law School;

   h.  Creating untrue, pretextual rationales to discipline Plaintiff and constructively remove Plaintiff from teaching and performing her full duties as a tenured professor, without due process, including an impartial investigation;

     i.  Requiring Plaintiff to meet terms not required of non-African Americans as she attempted to return to work after an approved medical leave;

     j.  Creating a race hostile and harassing work environment; and

     k.  Acting at all times, since 2018, with deliberate indifference to Plaintiff by disciplining her more harshly than non-African American professors.

119.   Acting under color of law and receiving federal funds, as a direct and proximate result of said intentional acts and omissions, in violation of §1981 of the Civil Rights Act of 1866, as amended, Defendants' agents and employees have caused Plaintiff to suffer, and she will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment; and impairing all other terms and conditions of her employment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and/or all injunctive relief allowed under §1981.

## COUNT IV

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, AS AMENDED AND CODIFIED AT 42 USC §1983

120.    Plaintiff repeats, realleges and incorporates paragraph 1 through 119, as set forth here and above by reference.

121.    Defendant UM Law School, operates as an educational program and receives federal assistance.

122.    The Defendant Law School, by and through its administrators, including but not limited to Dean West, operated under color of law in its employment decisions made regarding Professor Beny as stated above herein. Those decisions were made and/or ratified by Dean Mark West of the Defendant UM Law School.

123.    Defendants acted with deliberate indifference toward their obligation to provide a workplace free from race discrimination.

124.    Defendants treated Professor Beny differently, and adversely, because of her race in the terms and conditions of her employment. This different treatment includes the deprivation of certain rights given to non-African American whites, specifically, but not limited to:

a.   Refusing to allow her equal treatment compared to her white and male cohorts;

b.   Denying her a timely chair compared to her white cohort;

c.   Attempting to and in fact denying equal pay, sabbaticals, opportunity to teach in the Summer Masters of Corporate Law Program, interfering with her academic freedom and freedom of speech unlike favorable treatment given to Plaintiff's white comparables;

d.  Refusing to appoint Plaintiff to committees, specifically for hiring and not allowing Plaintiff input for new hires;

e.  Fostering a work environment which is biased and hostile toward Plaintiff an African American female;

f.  Repeatedly disciplining Plaintiff since 2018, resulting in adverse actions in all terms and conditions of her employment as a tenured professor at Defendant UM Law School;

g.  Fostering a work environment where Plaintiff was the only African American female tenured professor for several years;

h.  Referring to Plaintiff in stereotypical terms and attributing to her behaviors that are racial and imply that she is violent;

i.  Charging her with possibly carrying a weapon on campus, a racial stereotype;

j.  Repeatedly taking another individual's statement as truthful instead of Plaintiff's, even where there is ample proof of Plaintiff's truthfulness;

k.  Falsely accusing Plaintiff of retaliating against her students;

l.  Engaging in a high level of scrutiny in the monitoring of Plaintiff's teaching and behaviors unlike that of her non-African American comparable coworkers;

m.  Making false claims about Plaintiff's scholarship, work ethic and behaviors;

n.  Demanding that Plaintiff teach certain content and/or material in her class without regard to her academic freedom and freedom of speech;

o.  Interfering with and retaliating against Plaintiff's advocacy for equal opportunity on campus and retaliating against her and punishing her for exercising such advocacy for students, other professors and herself;

p. Denying Plaintiff her constitutional right to free speech, though it is embedded in Defendant UM Law School's SPG Rules and Regulations;

q. Refusing, after May 15, 2022, to allow Plaintiff a return to her duties as a fulltime tenured professor for retaliatory and arbitrary reasons, without due process; and

r. Pretextually creating a business rationale for Plaintiff's disparate adverse treatment which is untrue and unworthy of belief.

125.   As a direct and proximate result of said acts and omissions, under §1983, of the Civil Rights Act of 1866, by Defendants' agents and employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and/or all injunctive relief allowed under §1983.

## COUNT V

## VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

126.   Plaintiff repeats, realleges and incorporates paragraph 1 through 125, as set forth here and above by reference.

127. Defendants University and Law School operate as an education program and receive federal assistance.

128. Defendants have treated Plaintiff, an African American, one of only a few African American professors at UM Law School since 2003, in ways that are adversely disparate and hostile compared to white and male professors, while at all times operating under color of law with deliberate indifference in their employment decisions as stated above and herein.

129. Defendants have engaged in a systematic exclusion of African American professors at Defendant UM Law School, where at times Plaintiff was the only African American tenured female professor of over one hundred (100) professors. Despite Plaintiff's numerous attempts to assist Defendants in the hire of additional African Americans, Defendants have rejected all of her input.

130. As a direct and proximate result of said acts and omissions, under Title VI of the Civil Rights Act of 1964, as amended, Defendants' agents and employees have, through their actions and omissions, caused Plaintiff to suffer, and she will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and/or all injunctive relief allowed under Title VI.

## COUNT VI

### VIOLATION OF TITLE VII – CIVIL RIGHTS ACT OF 1964
### AS AMENDED 42 USC §2000e, *et. seq.* BASED ON SEX AND RACE

131.   Plaintiff repeats, realleges and incorporates paragraph 1 through 130, as set forth here and above by reference.

132.   Between August 2018 and approximately August 2022 Plaintiff Beny was the only female African American fulltime tenured Professor at Defendant Law School, out of nearly one hundred (100) similarly situated tenured or tenured track professors. Around 2012-2013, one of the African American female tenured professors retired and the other left academia for the private sector in 2018. There is currently only one (1) other African American fulltime tenured female who joined in 2022 and two (2) African American fulltime tenured males, one of whom joined in 2022.

133.   Defendants have violated Title VII, in the following ways:

a.   Fostering an atmosphere where Plaintiff was referred to as "hey gal", "the man", and other sexually and racially offensive comments at the Defendant UM Law School;

b. Treating Plaintiff like a stereotype of the "angry Black woman" with constant untrue written reference by Dean West to her demeanor and conduct as he escalated discipline;

c. Evaluating Plaintiff's performance with a disparate standard, compared to the standard used to evaluate non-African American males;

d. Refusing to allow Plaintiff the opportunity to work in the Masters of Corporate Law Program, instead favoring white men who received additional compensation of approximately Twenty Thousand ($20,000.00) Dollars;

e. Refusing to provide Plaintiff with the same, or similar, opportunities that were given to her male and non-African American comparables in salary, summer supplemental salary, research grants, chairs, sabbatical leave; discipline and other terms and conditions of employment;

f. Requiring Plaintiff, an African American female, to write up her requirements of "return to work plan," while not requiring men and non-African Americans to do so;

g. Embarrassing and humiliating Plaintiff, in the presence of other colleagues, administrators, students and others, to diminish her reputation at the Defendant Law School;

h. Creating untrue, pretextual rationales to discipline Plaintiff and then constructively remove Plaintiff from teaching and performing her other duties as a tenured professor, without an impartial investigation;

i. Subjecting Plaintiff to retaliation for her advocacy on behalf of herself and other African Americans and women;

j. Creating a race hostile, intimidating and harassing work environment;

k. Historically and presently creating a sexually hostile work environment and harassing work environment through Defendant Dean West's behaviors and conduct toward Plaintiff and others; and

l. Refusing to allow Plaintiff to return to her duties as a tenured professor under a pretextual unsubstantiated rationale, including that she may

bring a gun to campus, and implying that the University could possibly bring in law enforcement—an act of racial profiling.

134.   As a direct and proximate result of said acts and omissions, under Title VII, Civil Rights Act of 1965, as amended, by Defendants' agents and employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, reasonable attorney fees, and all injunctive relief allowed under Title VII.

## COUNT VII

## VIOLATION OF TITLE IX, 20 USC §1681, *et. seq.*

135.   Plaintiff repeats, realleges and incorporates paragraph 1 through 134, as set forth here and above by reference.

136.   Defendant UM Law School operates as an education program and receives federal assistance.

137.   Defendants have treated Plaintiff, a female African American, one of only a few female African American professors at UM Law School since 2003, in

ways that are adversely disparate than men, at all times operating under color of law with deliberate indifference in its employment decisions as stated above and herein.

138.   Defendants have engaged in a systematic exclusion of female African Americans at Defendant Law School, where at times Plaintiff has been the only female African American tenured professor of over one hundred (100) professors. Defendant has undertaken few efforts in its nearly two hundred (200) year history to increase the number of female African Americans, tenure track and tenured professors, at Defendant UM Law School.

139.   As a direct and proximate result of said acts and omissions, under Title IX, Civil Rights Act 20 USC §1681, *et. seq.*, as amended, by Defendants' agents and employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, reasonable attorney's fees, and injunctive relief allowed under Title IX.

**COUNT VIII**

## US CONSTITUTION – FIRST AMENDMENT
## FREEDOM OF SPEECH

140.   Plaintiff repeats, realleges and incorporates paragraph 1 through 139 as set forth here and above by reference.

141.   Plaintiff is a champion of equality. Because of her passionate advocacy for equal opportunity for students and professors at Defendant UM Law School, she has received discipline which has cumulated in the constructive loss of her fulltime tenured position at the Defendant UM Law School. Since May 16, 2022, Plaintiff has been barred from the classroom and from committee assignments in retaliation for her legitimate speech, based on false and pretextual rationales. Plaintiff's constitutional right to free speech has been thwarted to such a degree that she has been effectively silenced and removed.

142. Defendant West, in 2022, engaged Defendant UM Law School professors in discussions that implicate Plaintiff as possibly bringing a gun to the campus, an allegation with no basis, a blatant untruth designed to punish Plaintiff for her speech. Plaintiff was ostracized by the non-African American and majority male colleagues. One of her comparables, according to Dean West, recommended that police authorities be brought in to investigate Plaintiff.

143.   These bald face untruths about her propensity for violence have caused Plaintiff to be fearful of what she says and to whom and fearful for physical safety

on campus. Plaintiff has been bullied, intimidated, and penalized by Defendant Dean West for her speech since at least 2018.

144.   As a direct and proximate result of said acts and omissions in violation of the US Constitution, First Amendment, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and injunctive relief allowed under the U.S. Constitution's First Amendment.

## COUNT IX

## US CONSTITUTION – FIFTH AMENDMENT

145.   Plaintiff repeats, realleges and incorporates paragraph 1 through 144 as set forth here and above by reference.

146.   Defendant West has engaged without any due process hearing in an unlawful taking of Plaintiff's property interest by adversely disciplining Plaintiff on March 31, 2022 in her employment as a tenured professor, the discipline so harsh

that she lost substantial property interests presently and in the future. Defendant West's March 31, 2022 disciplinary letter states in pertinent part:

> "Accordingly, for the period beginning today and ending June 30, 2027, you are not eligible for salary increases, summer funding, Wolfson funds, Cook funds, or any type of discretionary leave, including sabbaticals, mid-sabbatical, or Elke's leaves. Your salary after that date will not return to that of your cohort."

147.   As a direct and proximate result of said acts and omissions, under the US Constitution, Fifth Amendment, as performed without due process, Plaintiff has suffered, and will continue to suffer, taking of property interest, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and all injunctive relief allowed under the U.S. Constitution Fifth Amendment's Takings Clause.

## COUNT X

## US CONSTITUTION – FOURTEETH AMENDMENT
## EQUAL PROTECTION AND DUE PROCESS

148.   Plaintiff repeats, realleges and incorporates paragraph 1 through 147 as set forth here and above by reference.

149.   Defendants University of Michigan and UM Law School, under the leadership of Defendant Dean West, operate educational programs and receive federal assistance.

150.   The Defendant Law School, by and through its administrators, including but not limited to Dean West, operates under color of law at all times when making its employment decisions regarding Professor Beny as stated above herein. Those decisions were made and/or ratified by the Dean of the Defendant UM Law School without any due process prior to his actions.

151.   The Defendants acted with deliberate indifference toward their obligation to provide a workplace free from race and gender discrimination.

152.   Defendants treated Professor Beny differently, adversely, because of her African American race, her color, and her gender in the terms and conditions of her employment. This different treatment includes both equal protection and due process violations, but is not limited to:

   a.  Allowing Plaintiff, for years at a time, to be the only African American female tenured professor while taking no structured process to increase African Americans;

   b.  Treating Plaintiff Professor Beny like a stereotype of the "angry Black woman" with constant written reference by Dean West to her demeanor in stereotypical terms;

c. Evaluating Plaintiff's performance with a disparate standard, compared to the standard used to evaluate her white comparables;

d. Refusing to allow Plaintiff the opportunity to work in the Summer Masters of Corporate Law Program, instead favoring non-African Americans and males;

e. Refusing to provide Plaintiff with the same, or similar, opportunities that were given to non-African American comparables;

f. Requiring Plaintiff, the only African American female, to write up a "return to work plan," while not requiring non-African Americans to do so and threatening her with termination;

g. Embarrassing and humiliating Plaintiff, in the presence of other colleagues, administrators, students and others, to diminish her reputation at the Defendant UM Law School;

h. Creating untrue, pretextual rationale, to discipline Plaintiff and constructively remove Plaintiff from teaching and performing her other duties, without due process, including an impartial investigation;

i. Requiring Plaintiff to meet terms of return to work not required of non-African Americans;

j. Creating a race hostile and harassing work environment;

k. Not advising Plaintiff pre-discipline, that she was potentially going to be disciplined on three (3) occasions and providing no hearing prior to the discipline; and

l. More harshly disciplining Plaintiff than non-African American comparable professors for similar or worse conduct.

153. As a direct and proximate result of said acts and omissions, under the

U.S. Constitution, Fourteenth Amendment, as amended, by Defendants' agents and

employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension

benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and/or all injunctive relief allowed under the U.S. Constitution, Fourteenth Amendment.

## COUNT XI

## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT (PWDCRA) BASED ON PERCEIVED DISABILITY

154.   Plaintiff repeats, realleges and incorporates paragraph 1 through 153, as set forth here and above by reference.

155.   Defendants, through Dean West and his appointed employees have since Plaintiff's leaves, all authorized, perceived Plaintiff as disabled and treated her in a disparate manner as follows, under the Michigan Persons with Disabilities Civil Rights Act:

> a.  Not requiring Plaintiff to take a "Fitness for Duty" examination; and instead, keeping Plaintiff from returning to work on May 16,  2022, based upon Dean West's perception that Plaintiff was unable to perform her position;

    b. Pretextually documenting a psychological condition in Plaintiff's formal personnel records with Defendant, including an allegation that that Plaintiff is capable of violence and could be armed with a weapon on campus;

    c. Humiliating and embarrassing Plaintiff in the presence of colleagues, coworkers, students and others, implying she is mentally unstable;

    d. Refusing Plaintiff advancement opportunities, including summer opportunities, chairs, research scholarships opportunities, and other leadership roles, including committee work;

    e. Disciplining Plaintiff without following the policies and procedures required for a tenured professor at University of Michigan Law School while Plaintiff was on an approved leave of absence;

    f. Harassing Plaintiff while she was on medical leave and sending her a traumatic communication, threatening her with termination, unless she created a "return to work plan;" and

    g. Not allowing the Plaintiff to return to work since May 16, 2022, though her medical provider allowed her to return.

156. As a direct and proximate result of said acts and omissions under PWDCRA, by Defendants' agents and employees, Plaintiff has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment; all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as

Plaintiff is found to be entitled, plus interest, costs and reasonable attorney's fees; and all injunctive relief allowed under the PWDCRA.

## COUNT XII

### VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA) BASED ON SEX, RACE AND FAMILIAL/MARITAL STATUS

157. Plaintiff repeats, realleges and incorporates paragraph 1 through 156 as set forth here and above by reference.

158. Plaintiff Beny, was the only female African American tenured Professor at Defendant's Law School between 2018 and 2022, out of nearly one hundred (100) similarly situated tenured or tenured track professors at Defendant Law School. Plaintiff is a single parent of one child and is not married. There is currently only one (1) other African American tenured female and two (2) African American tenured males.

159. Defendants have violated Title VII and the ELCRA, in the following ways:

   a. Fostering an atmosphere where Plaintiff was referred to as "hey gal" and other racially and sexually offensive monikers at the Defendant UM Law School;

   b. Treating Plaintiff like a stereotype of the "angry Black woman" with constant written reference by Dean West to her demeanor as he escalated discipline;

   c. Evaluating Plaintiff's performance with a disparate standard, compared to the standard used to evaluate non-African American males;

    d.  Refusing to allow Plaintiff the opportunity to work in the Summer Masters of Corporate Law Program, instead favoring white men who received additional compensation of approximately Twenty Thousand ($20,000.00) Dollars;

    e.  Refusing to provide Plaintiff with the same, or similar, opportunities that were given to her male comparables in research grants, chairs, sabbatical leave; discipline and other terms and conditions of employment;

    f.  Requiring Plaintiff, a female, to write up her requirements of return to work, while not requiring men to do so;

    g.  Embarrassing and humiliating Plaintiff, in the presence of other colleagues, administrators, students and others, to diminish her reputation at the Defendant Law School;

    h.  Creating untrue, pretextual rationale to discipline Plaintiff and then constructively remove Plaintiff from teaching and committee assignments, without an impartial investigation;

    i.  Subjecting Plaintiff to retaliation for her advocacy on behalf of herself and other African Americans and women;

    j.  Creating a race hostile and harassing work environment;

    k.  Historically and presently creating a sexually hostile work environment and harassing work environment through Defendant Dean West; and

    l.  Treating Plaintiff differently than professors who are married or who do not have children; including advising Plaintiff that she would have to bring her child to campus and teach live while her child had been exposed to COVID-19. Other male professors were allowed to work from home on Zoom.

160.    As a direct and proximate result of said acts and omissions, under the

Michigan Elliott-Larsen Civil Rights Act, by Defendants' agents and employees,

Plaintiff Beny has suffered, and will continue to suffer, lost wages and pension benefits, loss of earning capacity, loss of reputation, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation; requiring professional medical treatment, all past, present and future.

WHEREFORE, Plaintiff Professor Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees, and/or all injunctive relief allowed under the Michigan Elliott-Larsen Civil Rights Act.

## COUNT XIII

### HOSTILE WORK ENVIRONMENT BASED ON SEX AND RACE UNDER ELCRA

161.  Plaintiff repeats, realleges and incorporates paragraph 1 through 160 as set forth here and above by reference.

162.  Defendants, University of Michigan Law School and Dean Mark D. West, violated Title VII and the ELCRA in regard to its conduct and omissions toward Plaintiff Professor Laura Beny, an African American female, in the following manner:

   a. Making harassing and discriminatory remarks about Plaintiff's sexual physical attractiveness in 2010 and stating that he was her "minion";

b. Talking to Plaintiff about the attractiveness of other women;

c. Apologizing, in 2021, to the entire University of Michigan community for sexist and racist behavior toward Asian women and treating them as "lesser" than men, while continuing to discipline Plaintiff for trumped up untrue allegations;

d. Accusing Plaintiff of carrying a gun on campus and having meetings with Plaintiff's comparables to discuss the "issue;"

e. Though Defendant Dean West knew his conduct toward Plaintiff was illegal, he has continued the behavior to present; and

f. Persistently and harshly penalizing Plaintiff for conduct that Defendants do not penalize white male colleagues for engaging in.

163.    As a direct and proximate result of said hostile acts and omissions by Defendants' agents and employees, Plaintiff has suffered and will continue to suffer lost wages and pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation, requiring professional medical treatment, all past, present, and future.

WHEREFORE, Plaintiff Professor Laura Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees; and/or all injunctive relief allowed under her ELCRA Hostile Work Environment Count.

## COUNT XIV

## RETALIATION UNDER ALL FEDERAL AND STATE
## STATUTORY AND CONSTITUTIONAL COUNTS ABOVE I-XIII

164.   Plaintiff repeats, realleges and incorporates paragraph 1 through 163 as set forth here and above by reference.

165.   Plaintiff Professor Beny engaged in protected activity, since 2003, by championing for African Americans and female students and adding professors of color to the Defendant Law School. In 2015, 2021 and 2022 Plaintiff filed internal complaints; and filed external EEOC charges with the federal government based on discrimination she experienced herself of sex/gender, race, and disability.

166.   As a direct consequence of Plaintiff's protected activity by asserting her rights for others and herself, Defendants have subjected Plaintiff Professor Beny to retaliation and retaliatory harassment, and a retaliatory environment, in the terms and conditions of her employment, including but not limited to:

      a.  Charging Plaintiff, untruthfully, with misconduct, then disciplining her for pretextual reasons;

      b.  Not providing her with due process, yet taking substantial economic property from her past and into the future;

      c.  Instructing faculty and staff not to speak with Plaintiff, thereby ostracizing her from the Law School community;

      d.  Constructively removing her, since May 2022, from the main duties of her tenured professorship at Defendant Law School; and

      e.  Fostering an untrue statement that she is potentially carrying a gun on campus, then threatening police investigation, all without any factual substantiation.

167.   As a direct and proximate result of said retaliatory acts and omissions by Defendants' agents and employees, Plaintiff has suffered and will continue to suffer lost wages and pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, nervousness, embarrassment and humiliation, requiring professional medical treatment, all past, present, and future.

WHEREFORE, Plaintiff Professor Laura Beny, demands judgment against Defendants for such amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as Plaintiff is found to be entitled, plus interest, costs, and reasonable attorney's fees; and/or all injunctive relief allowed under all Federal and State statutory and Constitutional Authority in Counts I-XIII based upon retaliation for engaging in protected activity.

Respectfully submitted,

EDWARDS AND JENNINGS, PC

By:  /s/ *Alice B. Jennings*____
       Alice B. Jennings
       *Attorney for Plaintiff*
       3031 West Grand Boulevard, Suite 435
       Detroit, MI  48202
       (313) 961-5000
       ajennings@edwardsjennings.com

August 26, 2022

**JURY DEMAND**

Plaintiff demands a jury trial.


      Respectfully submitted,

              EDWARDS AND JENNINGS, PC


              By:  /s/ *Alice B. Jennings*____
                    Alice B. Jennings
                    *Attorney for Plaintiff*
                    3031 West Grand Boulevard, Suite 435
                    Detroit, MI  48202
                    (313) 961-5000
                    ajennings@edwardsjennings.com

August 26, 2022